IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 10, 2024

## STATE OF TENNESSEE v. CHARLES FELIX BELL, JR.

**Appeal from the Criminal Court for Davidson County**
**No. 2014-B-1165    Steve R. Dozier, Judge**

_____

**No. M2023-00534-CCA-R3-CD**

_____

Defendant, Charles Felix Bell, Jr., appeals the trial court's order revoking his probationary sentence for possession of cocaine with intent to sell. Following our review of the entire record and the briefs of the parties, we find no abuse of discretion and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Kevin Kelly, Nashville, Tennessee, for the appellant, Charles Felix Bell, Jr.

Jonathan Skrmetti, Attorney General and Reporter; G. Kirby May, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

On November 13, 2014, Defendant pled guilty to one count of possession of cocaine with intent to sell. He received a sentence of eight years, suspended to community corrections.

The record reflects that from 2015 to 2022, Defendant had seven violations of his community corrections and probationary sentence, primarily for continued drug use. For the first three violations which were filed between March 2015 and April 2016, the trial

court found Defendant in violation, sentenced him to time served, and reinstated him to community corrections. After the fourth violation, the warrant for which was sworn out on June 27, 2016, Defendant was found in violation and sentenced to remain in custody until August 29, 2016, then reinstated to community corrections and required to attend the Elam Program for substance abuse treatment. After the fifth violation, the trial court placed Defendant's sentence in effect, and gave him the option to participate in the Davidson County Drug Court ("DC-4").

On April 15, 2019, a warrant was issued for Defendant's sixth violation of his community corrections sentence for being "put out of the halfway house where he resided" for non-compliance and failing to return to DC-4 as instructed. Following a hearing, the trial court took the matter under advisement and entered a subsequent order "retiring" the matter as time served. Although the order indicated that Defendant's community corrections sentence would be reinstated, the trial court later entered an order stating that Defendant had successfully completed the Davidson County Residential Drug Treatment Program and was transferred to probation supervised by the Tennessee Department of Correction ("TDOC"). On April 22, 2021, a warrant was issued for Defendant's violation of his probation based on Defendant's receiving new charges of vandalism and assault. Following a hearing, the trial court found Defendant in violation and ordered time served, and reinstatement to probation.

The current probation violation, Defendant's eighth violation, was filed on February 6, 2023, alleging that Defendant had violated the terms and conditions of his probation by being arrested in Davidson County on November 9, 2022, for reckless driving, possession of a controlled substance, and evading arrest. He was arrested again in Davidson County on January 29, 2023, for assault, reckless endangerment with a deadly weapon, resisting arrest, possession of a firearm during the commission of a dangerous felony (drug offense), possession of a weapon (handgun) while under the influence of a controlled substance, and felony possession of both marijuana and cocaine.

A probation revocation hearing was held on March 2, 2023. Officer Matthew Jorgenson of the Metropolitan Nashville Police Department ("MNPD") testified that on January 29, 2023, he responded to a call at the House of Legends, a bar on Jefferson Street, concerning a man standing outside with a weapon pointing it at a security guard. When Officer Jorgenson arrived on the scene, the security guard directed him to Defendant who was standing across the street, approximately fifty to sixty yards away, armed with a semi-automatic handgun. Officer Jorgenson twice ordered Defendant to drop the gun, and on the second command, Defendant threw it across the parking lot. He told Defendant "numerous times" to get on the ground, and Defendant "ended up walking in circles, . . . , and went to talk to someone who was standing next to a car." Defendant eventually complied with Officer Jorgenson's request and was taken into custody. Officer Jorgenson testified that as he and another officer were attempting to handcuff Defendant, he "tried to rip his arm away" from the other officer and placed it under his body. The other officer

was able to pull Defendant's arm back out, and he and Officer Jorgenson placed Defendant in handcuffs.

Defendant had a "satchel" around his body that contained a plastic bag of what appeared to be marijuana, and there were "big white rocks" believed to be cocaine. The satchel was given to MNPD Officer Tanner LaVan. He field-tested the white rock substance and determined it to weigh 72.4 grams. The satchel also contained "a lot of small little baggies," and a set of digital scales. The marijuana was determined to be 23.87 grams. Officer LaVan testified that the contents of the bag and scales were consistent with "street level drug narcotic sales." He noted that Defendant received medical assistance due to the "way he was acting. It definitely appeared that either, you know, he possibly needed help because of the arrest or whether he was having a panic attack." The State did not introduce any proof concerning Defendant's arrest on November 9, 2022.

At the conclusion of the violation hearing, the State asked that Defendant's sentence be placed into effect. When asked if he wanted to be heard, defense counsel replied: "Your Honor's heard the proof." However, counsel requested to make certain that Defendant "gets the credits[.]" The trial court then made the following findings:

> Okay. I really hate to say this out loud and on the record, but this is his seventh violation.[1] I do find he's in violation. I sent him to prison before and DC-4 took him out of Morgan County. I think that happened back in 2017 and he's back again, 2022, March, with a violation. So here we have him month-plus across out waiving (sic) a gun around with drugs.
>
> So I mean, there is really no other option but to place the eight-year sentence with TDOC into effect.

The trial court gave Defendant credit for time served. Defendant now appeals the trial court's ruling.

**Analysis**

Defendant does not dispute that he violated the terms of his probation. Rather, he asserts that the trial court erred by placing his eight-year sentence in effect. Specifically, Defendant claims that the trial court's statement that "there is really no other option but to place the eight-year sentence with TDOC into effect" indicates that the trial court "decided not to use the discretion with which it has been entrusted." Defendant further asserts: "If the record of previous violations serves any purpose, it is to demonstrate that there are

---

[1] The record reflects that this was actually Defendant's eighth violation of his original alternative sentence in this case.

several other options other than placing the sentence into effect.  By rejecting the idea of alternatives, the [c]ourt abused its discretion."  The State responds that the trial court properly exercised its discretion in revoking Defendant's probation following his "commission of felony drugs and firearm-possession offenses, and it properly imposed a sentence of incarceration after its consideration of [Defendant's] numerous previous violations of his supervision."

Initially, we must address the timeliness of Defendant's pro se notice of appeal.  In a footnote, the State argues that the notice of appeal was untimely and that the appeal should be dismissed.  The order revoking Defendant's probation and placing his sentence into effect was entered on March 2, 2023.  Defendant's notice of appeal was filed on April 6, 2023, thirty-five days after entry of the order.  A notice of appeal must be filed within thirty days of entry of judgment.  Tenn. R. App. P. 4(a).  Because a trial court is without authority to extend the time for filing a notice of appeal, Defendant's notice of appeal in this case was untimely.  Tenn. R. App. P. 2; *State v. Person*, No. M2019-02159-CCA-R3-CD, 2020 WL 6938436, at *3 (Tenn. Crim. App. Nov. 25, 2020); *Hicks v. State*, M2006-01297-CCA-R3-PC, 2007 WL 4245087, at *3 (Tenn. Crim. App. Dec. 4, 2007).  However, in the interest of justice, we waive the timely filing of the notice of appeal.  *See* Tenn. R. App. P. 4.

It is within a trial judge's discretionary authority to revoke a defendant's probation upon a finding by the preponderance of the evidence that a defendant has violated the conditions of his or her probation.  *See* T.C.A. § 40-35-311(d)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991).  A violation of probation need not be established beyond a reasonable doubt; instead, the proof must be sufficient to "allow[] the trial judge to make a conscientious and intelligent judgment."  *Harkins*, 811 S.W.2d at 82.  If the trial court finds that a defendant has violated his or her probation by "commit[ing] a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, absconding, or contacting defendant's victim in violation of a condition of probation," the trial court has discretion to "revoke the probation and suspension of sentence . . . and cause the defendant to commence the execution of the judgment as originally entered . . ." or impose other discretionary consequences as provided by statute.  T.C.A. §§ 40-35-311(e) (2); -308(c)(1), (2); -310 (2022).

We review the trial court's decision to revoke probation for abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record."  *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022).  "In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred."  *State v. Farrar*, 355 S.W.3d 582 (Tenn. Crim. App. 2011) (quoting *Harkins*, 811 S.W.2d at 82); *see State*

- 4 -

*v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see also State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) ("A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010))).

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. As explained by the Tennessee Supreme Court "[t]he first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Dagnan*, 641 S.W.3d at 757. If a trial court finds by a preponderance of the evidence that a defendant violated his or her probation, then it is within the trial court's discretionary authority to revoke the defendant's probation. T.C.A. § 40-35-311(e)(1), (2); *Dagnan*, 641 S.W.3d at 756; *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005).

In accordance with the first *Dagnan* consideration, based on the testimony of Officers Jorgenson and LaVan, the trial court found, and Defendant does not contest, that he violated his probation by committing new crimes that involved being in possession of drugs and "waiving (sic) a gun around" while on probation.

Moving to the second prong of *Dagnan*, the trial court made sufficient findings to support its decision to order Defendant to serve the balance of his sentence in confinement. When considering the consequence of a revocation of probation, a trial court may consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5. "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jones*, No. E2023-00155-CCA-R3-CD, 2023 WL 6389810, at *3 (Tenn. Crim. App. Sept. 29, 2023), *no perm. app. filed* (quoting *State v. Shelton*, No. E2022-00875-CCA-R3-CD, 2023 WL 2261081, at *3 (Tenn. Crim. App. Feb. 28, 2023), *perm. app. denied* (Tenn. June 29, 2023)); *State v. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999); *see State v. Brumfield*, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016); *see also State v. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). In addition to the circumstances of Defendant's new felony offenses and arrest, the trial court considered Defendant's numerous other prior violations in this case and that the court "sent [Defendant] to prison before and DC-4 took him out of Morgan County."

Based on the record, we conclude that the trial court did not abuse its discretion in finding Defendant in violation of his probationary sentence and ordering him to serve the balance of his eight-year sentence in confinement. Defendant is not entitled to relief.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.


_____
JILL BARTEE AYERS, JUDGE